**ESTATE of E. J. VAN HEUSDEN, Deceased Transferee et al., Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 23170.**

United States Court of Appeals Fifth Circuit.

Nov. 14, 1966.

S. J. Foosaner, Newark, N. J., for petitioners.

Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Mitchell Rogovin, Chief Counsel, I.R.S., Richard P. Milloy, Atty., I.R.S., Harry Baum, Atty., Dept. of Justice, Albert J. Beveridge, III, Washington, D. C., for respondent.

Before TUTTLE, Chief Judge, and BROWN and GODBOLD, Circuit Judges.

TUTTLE, Chief Judge:

This is an appeal by the appellants, as transferees, of a corporation, West Cocoa Acres, Inc., now liquidated, from a decision of the Tax Court establishing an income tax deficiency for the taxable year 1958, against the corporation in the amount of $65,608.01. The findings of fact and opinion of the Tax Court are reported at 44 T.C. 491.

The question presented here is whether the Tax Court correctly held that the corporation which was formed in order to acquire an option owned by the individual stockholders to purchase and then carry out an offer already received by the individual taxpayers, to resell a tract of real estate at a greatly appreciated figure, and which corporation was thereafter liquidated pursuant to a plan adopted at the time the corporation was formed, was a "collapsible corporation," as defined by Section 341(b) of the Internal Revenue Code of 1954, and, therefore, not entitled to the nonrecognition-of-gain-benefits of Section 337 of the Code because of the provisions of Section 337 (c) (1) (a). Appellants' case is based on their contention that under Section 337 of the Internal Revenue Code of 1954,[1] the gain on the sale was not to be recognized because the corporation satisfied the requirements of Section 337. The government, to the contrary, points to the limitations section which provides that the section shall not apply to any sale or exchange made by a collapsible corporation as is defined in Section 341 (b).[2]

---

1. § 337. Gain or loss on sales or exchanges in connection with certain liquidations.

  (a) *General Rule.*—If—
    (1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and
    (2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

    \*    \*    \*    \*    \*

  (c) *Limitations.*—
    (1) Collapsible corporations and liquidations to which section 333 applies.—This section shall not apply to any sale or exchange—

      (A) made by a collapsible corporation (as defined in section 341 (b)), \* \* \*

  (26 U.S.C. 1958 ed., Sec. 337.)

2. § 341. Collapsible Corporations.
    \*    \*    \*    \*    \*

  (b) *Definitions.*—
    (1) *Collapsible corporation.*—For purposes of this section, the term "collapsible corporation" means a corporation formed or availed of principally for the manufacture, construction, or production of property, for the purchase of property which (in the hands of the corporation) is property described in paragraph (3), or for the holding of stock in a corporation so formed or availed of, with a view to—
      (A) the sale or exchange of stock by its shareholders (wheth-

This controversy arises from a determination by the Commissioner that West Cocoa Acres, Inc. was a collapsible corporation and consequently that the sale by it of the 760-acre tract of real estate produced ordinary income taxable to the corporation, although it occurred within twelve months after adoption of a plan of complete liquidation. The taxpayers in this litigation are Guy A. Van Heusden and the Estate of his father, E. J. Van Heusden, who concededly are liable as transferees under Section 6901, Internal Revenue Code of 1954, for any income tax which Cocoa Acres may owe. The father was not active in the transactions, and, therefore, references to Van Heusden or the taxpayer are intended to be to Guy A. Van Heusden.

The taxpayer was formerly an engineer employed in California, by North American Aviation. In 1952, North American sent him to Florida in connection with the establishment of missile testing facilities at Cape Canaveral. Both before leaving that company, and after his leaving the company, Van Heusden entered into a number of real estate transactions, acquiring land and, usually after about six months, selling it at a profit. Suffice it to say that these activities were of a nature and of sufficient quantity to have permitted the Commissioner colorably to attack any effort by Van Heusden to treat as capital gain any gain realized by him in the sale of real estate at the time of the transaction here discussed.

Coming to the particular transaction here under consideration, the facts can be quite simply stated. Taxpayer contracted to buy land in question known as El Pico tract on September 3, 1957, shortly after he left his employment with Aviation, at the purchase price of $215,-000. A short time later, the broker through whom petitioner had purchased the property told him that he had found a prospective purchaser at a price of $418,000. By October 11, 1957, negotiations by the broker in taxpayer's behalf had reached the satisfactory stage—that is to say, the parties were satisfied that a sale could be made. Thereupon the taxpayer, on the advice of counsel, and after petitioner had expressed concern that the sale might fall through if his identity were known to the prospective purchasers, caused the corporation to be formed, and taxpayer assigned the contract of purchase to it. At the time of its formation, it was taxpayer's purpose to have the corporation carry out this one transaction of receipt of assignment of the contract of purchase, and a subsequent sale to the waiting purchaser, and for it then to be liquidated. On the date of its organization, the corporation entered

er in liquidation or otherwise), or a distribution to its shareholders, before the realization by the corporation manufacturing, constructing, producing, or purchasing the property of a substantial part of the taxable income to be derived from such property, and

(B) the realization by such shareholders of gain attributable to such property.

(2) *Production or purchase of property.*—For purposes of paragraph (1), a corporation shall be deemed to have manufactured, constructed, produced, or purchased property, if—

\*  \*  \*  \*  \*

(B) it holds property having a basis determined, in whole or in part, by reference to the cost of such property in the hands of a person who manufactured, constructed, produced, or purchased the property, or

(C) it holds property having a basis determined, in whole or in part, by reference to the cost of property manufactured, constructed, produced, or purchased by the corporation.

(3) *Section 341 assets.*—For purposes of this section, the term "section 341 assets" means property held for a period of less than 3 years which is—

\*  \*  \*  \*  \*

(B) property held by the corporation primarily for sale to customers in the ordinary course of its trade or business;

\*  \*  \*  \*  \*

into a contract for sale of the property for $418,000, the closing date to be in May, 1958. The Board of Directors of the corporation adopted a plan of complete liquidation on May 2, 1958, the closing was held on May 16, 1958, and the corporation was in fact liquidated in December, 1958, its assets being distributed equally to the taxpayers. The Tax Court concluded that Cocoa Acres was a collapsible corporation within the definition of Section 341(b).

■ As pointed out in the Tax Court's opinion, the parties agree that three conditions must be met to satisfy the definition of a collapsible corporation. Such corporation must be (1) formed or availed of principally for the purchase of property, (2) which is held by the corporation primarily for sale to customers in the ordinary course or trade of business, (3) with a view to a distribution to the shareholders before the realization by the corporation of a substantial part of the taxable income to be derived from the property. We agree with the Tax Court that this corporation fits neatly into each of these requirements. It is clear that the corporation was formed or availed of not only "principally," but more realistically, "solely" to purchase the El Pico tract. Regardless of the motive of Van Heusden in forming the corporation, whether it was to conceal his identity or for the tax benefits that might accrue therefrom, there could be no doubt that the purpose which was served by its formation was the purchase and resale of the El Pico tract. As the Tax Court points out, Section 341(b) is directed towards the function performed by the corporation, not the underlying motives by the taxpayer in causing its creation. See Braunstein v. Commission, 374 U.S. 65, 83 S.Ct. 1663, 10 L.Ed.2d 757. Then, as to the question whether this property was "held by the corporation primarily for sale to customers in the ordinary course of its trade or business," we are not faced with the usual problem of determining the purpose for which a taxpayer holds a particular tract of land when he seeks

capital gains treatment on its sale. Cf. Gamble v. C.I.R., 5 Cir., 242 F.2d 586; Thomas v. C.I.R., 5 Cir., 254 F.2d 233. Here there can be not the slightest question that the corporation was organized for and did acquire this land for the sole purpose of selling it to purchasers already ascertained and at a price already understood to be available. The fact that Van Heusden may have originally intended to hold the property for a subsequent appreciation in value is immaterial, because the question here is whether the corporation, whose sale is in issue, held the property for any purpose other than for sale to customers. As pointed out, there can be no doubt about this because this was the sole purpose for organizing this corporation. This court, like other courts, has held that "a single vendee may be a customer." Patterson v. Belcher, 5 Cir., 302 F.2d 289, 294.

■ The final requisite of collapsibility is the existence of "a view to a distribution to its shareholders, before the realization by the corporation of a substantial part of the taxable income to be derived from such property," and "the realization by such shareholders of gain attributable to such property." It seems too plain for discussion that this corporation was utilized with a view to a distribution of all of the assets of the corporation immediately following the sale, and that the stockholders realized gain which is attributable to the property in question.

This leaves only the question whether there was a view to a distribution "before realization of a substantial part of the taxable income to be derived from the property." In Payne v. Commissioner of Internal Revenue, 5 Cir., 268 F.2d 617, at page 622, this Court said with reference to this language:

"A careful study of this section seems clearly to require only that the corporations be availed of for [purchase of property] *with a view to a* distribution * * * prior to the realization of a substantial portion, etc. If the corporation is owned or availed of *with a view to* making the distribution

prior to realization of substantial income, it seems clear that it is not necessary for the commissioner to prove that such distribution was actually made prior to such realization." (Emphasis added.)

■ In other words, this Court was there saying that if the corporation was availed of for the purpose of acquiring property with a view to a distribution of the property or other assets owned by the corporation prior to the realization of a substantial portion of the taxable income to be realized, and if the shareholders actually realized gains attributable to such property, then it was a collapsible corporation regardless of whether the corporation had or had not realized a substantial portion of the income to be derived from the property. Here, it is perfectly apparent that when Van Heusden set up the corporation it was set up in a manner that contemplated (i. e., with a "view" to) non-recognition for tax purposes of a sale of the property under Section 337. Thus it is clear that the corporation was availed of for the purchase of property with the *view* to a distribution to its shareholders before the realization by the corporation of a substantial part of the taxable income to be derived from such property, since, of course, it was intended that there be no taxable income under the plan set up by appellants.

■ In the *Payne* case, we did not base our decision on this construction, however, and we do not believe that we need to do so here. It seems, rather, that the language should be construed in a manner that would exclude from the terms "substantial part of the net income to be derived from such property" any income received from the *sale* of the property. It seems clear that the word "income" refers only to that income that is derived from the *ownership* of the property and not from its sale, under the circumstances here present. The clarity of this construction is buttressed by the fact that Section 341 would prove to be a nullity in every case of property acquisition were it otherwise the case, for, if the gain from the *sale* of the property is to be considered as part of the taxable "income," which, if substantial enough, would defeat the collapsible corporation statute, then obviously every time a potentially collapsible corporation purchased property and sold it, the purpose of this statute would be frustrated because, not only a substantial part of the income, but all of the income from the property, would then be realized before the distribution. The simplest answer to this absurdity is that the correct manner of construing this language is to construe it as referring only to taxable income to be deprived from the ownership of the property. Taxpayer would have us construe the language of the section as reading, "before realization of a substantial part of the income to be derived from the property, including gains from a sale of the property."

The Internal Revenue Service has sought to achieve this same result by its regulation, Section 1.337-1,[3] which deals with a situation where, as is the case here, the corporation received the proceeds of the sale before distribution to petitioners. That regulation provides that if the property had been distributed to shareholders prior to the sale, and if this would have resulted in taxable gain to the individual shareholder, then the substantiality test has not been satisfied. The Tax Court has approved this regulation in Sproul Realty Company, 38 T.C.

3. SECTION 1.337-1 General
    * * * sales or exchanges made by a collapsible corporation (as defined in section 341(b) are excluded from the operation of section 337 by section 337 (c). Accordingly, except as provided in section 341(e) (4), section 337 does not apply to any sale or exchange of property whenever the distribution of such property in partial or complete liquidation to the shareholders in lieu of such sale or exchange would have resulted in the taxation of the gain from such distribution in the manner provided in section 341(a) as to any shareholder or would have resulted in the taxation of the gain in such manner, but for the application of section 341(d). * * *

844, in which it was held to be valid. We think we need not reach this because a proper construction of the language itself achieves the same result.

■ Finally, appellant contends that Section 341(e) (4) of the Code removes Cocoa Acres from the definition of a collapsible corporation. Without deciding whether, if applicable, this section would remove the corporate taxpayer here from the category of collapsible corporations, we conclude that we are not permitted to give consideration to this argument because by its very terms, the section, when enacted by the Congress in 1958, is restricted to "sales or exchanges, and distributions after the date of the enactment of this Act (Sept. 2, 1958)." The sale here in question was, of course, made prior to that date.

The decision of the Tax Court is Affirmed.