LEISURE TIME ENTERPRISES, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1119–69. Filed August 26, 1971.

---

[12] Respondent cited sec. 1.451(b), Income Tax Regs., but we feel there was a clerical omission of the subpar. number "2" before "b".

*Elliott K. Braverman*, for the petitioner.
*E. L. Newberger*, for the respondent.

OPINION

RAUM, *Judge:* The Commissioner determined a deficiency of $18,-066.81 in petitioner's income tax for the taxable year ended April 30, 1966. The only issue presented for decision is whether gain realized by petitioner on the sale of its property pursuant to a plan of complete liquidation qualifies for nonrecognition under the provisions of section 337, I.R.C. 1954. The resolution of that question depends upon the applicability of section 337(c)(1)(A) which excludes from the coverage of section 337 "any sale or exchange * * * made by a collapsible corporation (as defined in section 341(b))." The facts have been stipulated.

Petitioner Leisure Time Enterprises, Inc. was incorporated on May 16, 1962. During the taxable year ended April 30, 1966, its address was 3205 Silverside Road, Wilmington, Del. Petitioner filed its Federal corporate income tax return for the taxable year ended April 30, 1966, with the district director of internal revenue at Wilmington, Del.

At all times petitioner's sole stockholder was Louis P. Shassian (Shassian). Shassian was the sole transferee of petitioner's assets. At the time the petition herein was filed, Shassian was accepting mail for petitioner at 2601 Carpenter Road, Wilmington, Del.

Shassian was a builder engaged primarily in the construction of residential properties through controlled corporations. In 1962 he held a controlling interest in Wilmot Homes, Inc. (Wilmot), a Delaware corporation engaged in the development of residential housing, and during that year Wilmot built homes in developments known as Colonial Woods, Tarleton, Woodbine, and Devonshire.

In 1962 Shassian determined that a swim club should be built on acreage near the foregoing developments. Thereupon, the residents of the communities organized Silverside Swim Club (Silverside or the Swim Club), a nonprofit corporation. Silverside and Shassian agreed that once built, the club's facilities would be leased to Silverside for a period of 5 years and then sold to the Swim Club.

After entering into the foregoing agreement Shassian had Wilmot begin construction of facilities for the club on land in the area. The

land was not at that time owned by Shassian but was owned by Louise Brown and Paul Weinberg, who were relatives of Shassian, and by Mark E. Rubinstein.

On May 16, 1962, Shassian incorporated petitioner and became its sole stockholder. On the same date all of the construction costs of the swim club "accumulated" up to that time were transferred to petitioner's books and reflected as assets. A corresponding sum was credited on petitioner's books to accounts payable to Wilmot Homes, Inc.

On May 21, 1962, petitioner entered into a contract with Silverside which provided that the swim club facilities would be leased to Silverside for 5 years at a rental of $25,000 per year and that at the end of the 5-year period, the facilities would be sold to the Swim Club for $250,000.

On or about May 21, 1962, petitioner entered into a lease-purchase agreement with Brown, Weinberg, and Rubinstein for (a) the lease of approximately 11 acres in the area of the swimming pool for a term of 5 years at a rental of $10,000 per year and (b) the purchase of such land for $100,000, settlement to take place at the expiration of the lease. The rental of $10,000 per year was for the lease of the land and was not to be credited toward the $100,000 purchase price.

Additional work on the bath houses, fencing, toilets, landscaping, and the like continued through June of 1962. Such construction work was performed by Wilmot on behalf of petitioner.

Silverside was unable to pay any part of the rental called for by the lease. During the term of the lease it made two payments, one of $8,000 in 1963 and one of $18,000 in 1964, which were applied against the sale price of the swim club facilities. In 1965 petitioner and Silverside negotiated new terms for the sale of the club. On June 10, 1965, petitioner's board of directors approved the sale of the swim club to Silverside for $272,000.

On July 12, 1965, petitioner purchased the leased premises from Brown, Weinberg, and Rubinstein for the agreed price of $100,000. Settlement between petitioner and Silverside with respect to the sale of the swim club occurred 1 day later, on July 13, 1965.

On July 23, 1965, petitioner's board of directors approved a resolution to dissolve the corporation. Petitioner was liquidated soon thereafter. The only activity engaged in by petitioner during its existence related to the swim club, and petitioner realized no income from the time of its incorporation until the facilities were sold.

The parties have stipulated that "there was a $61,761.66 gain realized from the liquidation of the petitioner." Although they have not made it entirely clear, it appears that such gain was realized by petitioner on the sale of the swim club facilities and was then distributed to Shassian, its sole stockholder.

In his notice of deficiency the Commissioner determined that petitioner was a collapsible corporation "under the provisions of section 341" and that therefore the gain realized by petitioner was not eligible for nonrecognition under section 337. The Commissioner further determined that the $61,761.66 gain was derived from the sale of property which was not a capital asset and was therefore includable in petitioner's gross income for the taxable year ending April 30, 1966, as ordinary income.

Section 337, I.R.C. 1954, provides that a corporation which adopts a plan of complete liquidation and within the next 12 months distributes all of its assets in complete liquidation shall recognize no gain or loss from the sale or exchange of its property within the 12-month liquidating period.[1] Section 337(c)(1)(A) excludes from the coverage of this section any sale or exchange "made by a collapsible corporation (as defined in section 341(b))." The controversy in this case is confined to the question whether section 337(c)(1)(A) precludes petitioner from qualifying for nonrecognition under section 337.[2]

The Commissioner has determined that petitioner is a "collapsible corporation" as that term is defined by section 341(b)[3] and that by

---

[1] SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.

(a) GENERAL RULE.—If—
(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and
(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,
then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

[2] No question is here presented as to the applicability of sec. 337 (e.g., as to whether there was compliance with the requirements of sec. 337(a)(1) and (2)), apart from the operative effect of secs. 337(c)(1)(A) and 341(b).

[3] SEC. 341. COLLAPSIBLE CORPORATIONS.

(a) TREATMENT OF GAIN TO SHAREHOLDERS.—Gain from—
(1) the sale or exchange of stock of a collapsible corporation,
(2) a distribution in partial or complete liquidation of a collapsible corporation, which distribution is treated under this part as in part or full payment in exchange for stock, and
(3) a distribution made by a collapsible corporation which, under section 301(c)(3)(A), is treated, to the extent it exceeds the basis of the stock, in the same manner as a gain from the sale or exchange of property,
to the extent that it would be considered (but for the provisions of this section) as gain from the sale or exchange of a capital asset held for more than 6 months shall, except as otherwise provided in this section, be considered as gain from the sale or exchange of property which is not a capital asset.

(b) DEFINITIONS.—
(1) COLLAPSIBLE CORPORATION.—For purposes of this section, the term "collapsible corporation" means a corporation formed or availed of principally for the manufacture, construction, or production of property, for the purchase of property which (in the hands of the corporation) is property described in paragraph (3), or for the holding of stock in a corporation so formed or availed of, with a view to—
(A) the sale or exchange of stock by its shareholders (whether in liquidation or otherwise), or a distribution to its shareholders, before the realization by the corporation manufacturing, constructing, producing, or purchasing the property of a substantial part of the taxable income to be derived from such property, and
(B) the realization by such shareholders of gain attributable to such property.

reason of section 337(c)(1)(A) the gain which it realized cannot escape recognition under section 337(a). Petitioner's principal contention is that the definition in section 341(b) must be read together with the 3-year limitation provided by section 341(d)(3) and that, by virtue of such limitation, section 337(c)(1)(A) is inapplicable to petitioner.

Petitioner has not conceded that it is a collapsible corporation under section 341(b)—wholly apart from the possible applicability of subsection (d)(3). However, it has not strongly urged otherwise. Indeed the only argument it has offered with respect to the applicability of section 341(b) is confined to the following two sentences:

Petitioner does not believe that the stipulated facts demonstrate that it was a "collapsible corporation" within the definition of Section 341(b), Internal Revenue Code of 1954. Sale of its property was one of only [sic] several possibilities (and not necessarily its major objective from the outset).

By this suggestion petitioner apparently makes reference to the statutorily required "view" under section 341(b). The record however is wholly inadequate to support a finding that the requisite "view" was absent here. In view of the fact that the burden of proof is upon petitioner, we conclude that—apart from the applicability of section 341 (d)(3)—petitioner is a collapsible corporation under section 341(b). Cf. *Sproul Realty Co.*, 38 T.C. 844, 856–857; *Guy A. Van Heusden*, 44 T.C. 491, 499, affirmed 369 F. 2d 119 (C.A. 5).

Petitioner's primary argument is that section 341(b) must be read together with section 341(d)(3) which limits the applicability of section 341:

SEC. 341. COLLAPSIBLE CORPORATIONS.

(d) LIMITATIONS ON APPLICATION OF SECTION.—In the case of gain realized by a shareholder with respect to his stock in a collapsible corporation, this section shall not apply—

\* \* \* \* \* \* \*

(3) to gain realized after the expiration of 3 years following the completion of such manufacture, construction, production, or purchase.

Petitioner emphasizes that by virtue of subsection (d)(3), gain realized by a stockholder of a collapsible corporation may escape ordinary-income treatment under section 341(a)—even though the corporation is defined as a "collapsible corporation" by subsection (b). Petitioner urges that a similar result should follow under section 337(c)(1)(A): that if section 341(d)(3) is applicable, a corporation should not be denied the benefits of section 337, even though it is defined as "collapsible" by section 341(b).

Petitioner contends that the gain realized by Shassian is described by subsection (d)(3) and urges, on the basis of the foregoing reason-

ing, that it is therefore not governed by section 337 (c) (1) (A).[4] We disagree and hold that the subsection (d) (3) limitation is irrelevant to the applicability of section 337 (c) (1) (A).

The operative statutory language is clear and specific in its terms:

SEC. 337.  GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.

   (c) LIMITATIONS.—

      (1) COLLAPSIBLE CORPORATIONS AND LIQUIDATION TO WHICH SECTION 333 APPLIES.—This section shall not apply to any sale or exchange—

         (A) made by a collapsible corporation (*as defined in section 341(b)*), * * * [Emphasis supplied.]

It refers unmistakably to the definition of collapsible corporation provided by section 341(b). Section 341(d) does not purport to alter or limit that definition; it is not even addressed to the collapsible corporation's tax treatment; rather it excludes from the scope of section 341 certain gains realized by *shareholders* of such corporations. Cf. *Sproul Realty Co.*, 38 T.C. 844, 859. Thus, section 341(d)(3) excludes "*gain realized by a shareholder* with respect to his stock in a collapsible corporation * * * after the expiration of 3 years following the completion of such manufacture, construction, production, or purchase." (Emphasis supplied.) In our judgment, the statutory language clearly states that the applicability of section 337 (c) (1) (A) to a collapsible corporation does not depend upon the treatment given to the gains of certain of its shareholders under section 341(d).

The regulations issued under section 337 explicitly confirm the foregoing conclusion:

Sec. 1.337–1  General,

sales or exchanges made by a collapsible corporation (as defined in section 341(b)) are excluded from the operation of section 337 by section 337(c). Accordingly, except as provided in section 341(e) (4), section 337 does not apply to any sale or exchange of property whenever the distribution of such property in partial or complete liquidation to the shareholders in lieu of such sale or exchange would have resulted in the taxation of the gain from such distribution in the manner provided in section 341(a) as to any shareholder or would have resulted in the taxation of the gain in such manner, *but for the application of section 341(d)*. * * * [Emphasis supplied.]

See also Rev. Rul. 63–125, 1963–2 C.B. 146. Although we were not then faced with the question of the relationship between sections 337 (c) (1) (A) and 341 (d) (3), in *Sproul Realty Co.*, 38 T.C. 844, 857, we sustained the validity of the regulations to the extent they were pertinent therein. See also *Guy A. Van Heusden*, 44 T.C. 491, 499, affirmed 369 F. 2d 119 (C.A. 5). Insofar as they are applicable here, the regulations continue to represent a reasonable interpretation of

---

[4] The Commissioner disputes petitioner's contention that Shassian's gain is described by sec. 341(d)(3). However, in view of our disposition of the case, we need not consider this issue.

the statute. And it is well settled that "Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and that they constitute contemporaneous constructions by those charged with administration of these statutes which should not be overruled except for weighty reasons." *Commissioner* v. *South Texas Lumber Co.*, 333 U.S. 496, 501; see also *Bingler* v. *Johnson*, 394 U.S. 741, 749–750; *Colgate Co.* v. *United States*, 320 U.S. 422, 426; *Fawcus Machine Co.* v. *United States*, 282 U.S. 375, 378; *Brewster* v. *Gage*, 280 U.S. 327, 336; *Textile Mills Corp.* v. *Commissioner*, 314 U.S. 326, 336–339; *Boske* v. *Comingore*, 177 U.S. 459, 470; *Regal, Inc.*, 53 T.C. 261, 263–264, affirmed per curiam 435 F. 2d 922 (C.A. 2); *William F. Sanford*, 50 T.C. 823, 832, affirmed 412 F. 2d 201 (C.A. 2) certiorari denied 396 U.S. 841; cf. *United States* v. *Correll*, 389 U.S. 299, 307. We think that the regulations are valid and that they support the Commissioner's position here.[5]

We recognize that petitioner's position is not without appeal. Quoting Rev. Rul. 58–241, 1958–1 C.B. 179, it urges that "The reason for the limitation found in Section 337(c)(1)(A) * * * was to prevent the existence of a loophole through which a 'collapsible corporation' could escape tax on the sale of its property, yet have the shareholders pay the tax on their liquidation gain at long-term capital gain rates." On the basis of this statement of statutory purpose, petitioner urges that the statute was designed to prevent more favorable tax treatment upon a corporate sale of assets pursuant to a section 337 liquidation than was available through a sale of stock by the corporation's shareholders (which was subject to section 341). It would thus be anomalous, petitioner contends, to apply that statute where, by virtue of section 341(d)(3), the corporation's shareholders are not subject to section 341; to do so would render the tax treatment of the sale of assets *less favorable* than that available by a sale of stock.[6]

---

[5] A number of commentators have forecast the result we reach herein. See, e.g., Axelrad, "Tax Advantages and Pitfalls in Collapsible Corporations and Partnerships," 34 Taxes 870–872 (1956); MacLean, "Taxation of Sales of Corporate Assets in the Course of Liquidation," 56 Col. L. Rev. 666–668 (1956); Peck & Lees, "Current Tax Problems on Termination of Corporate Entity or Interest Therein," 10 U. So. Cal. Tax Inst. 247–248 (1958); Mandell, "Twelve-Month Liquidations and Collapsibility of Real Estate Corporations," 21 Ann. N.Y.U. Tax Instit. 716–717 (1963); Malouf & McLane, "Collapsible Corporations, 20 SW. L.J. 778–780 (1966); Bittker & Eustice, "Collapsible Corporations in a Nutshell," 22 Tax L. Rev. 155–156 (1967); Dohan, "Recent Developments under Section 337," 25 Ann. N.Y.U. Tax Inst. 297, 323–325 (1967); Faber, "Planning Opportunities for Avoiding Collapsible Corporation Treatment," 32 J. Taxation 81 (1970). Cf. DeWind & Anthoine, "Collapsible Corporations," 56 Col. L. Rev. 526.

[6] We note that while the purpose which petitioner attributes to the statute is highly plausible, such purpose was not articulated in the 1954 committee reports. See H. Rept. No. 1337, 83d Cong., 2d Sess. 38–39, A106–A109 (1954); S. Rept. No. 1622, 83d Cong., 2d Sess. 48–49, 258–260 (1954); H. Rept. No. 2543, 83d Cong., 2d Sess. 36–37 (1954). Moreover, it is possible that Congress had a more general purpose: to deny the benefits of sec. 337 to any corporation holding a relatively large amount of appreciated property produced or purchased with a view to a sale of stock or liquidation. Cf. MacLean, "Taxation of Sales of Corporate Assets in the Course of Liquidation," 56 Col. L. Rev. 641, 668 (1956).

An analogous argument was made by the taxpayers in *Braunstein* v. *Commissioner*, 374 U.S. 65, affirming 305 F. 2d 949 (C.A. 2), affirming 36 T.C. 22. There the taxpayers argued that the collapsible corporation provisions were designed to close a loophole through which individuals had attempted to convert ordinary income into long-term capital gain by use of the corporate form and that those provisions should not apply where a corporation's stockholders would have been entitled to capital gain treatment even if they had not used a corporation; in such circumstances, it was argued, the corporation was not used to convert ordinary income into capital gain and application of the collapsible corporation provisions would therefore be inappropriate. See 374 U.S. at 68–69. The Supreme Court rejected the taxpayers' argument (374 U.S. at 70–72):

> There is nothing in the language or structure of the section to demand or even justify reading into these provisions the *additional* requirement that the taxpayer must in fact have been using the corporate form as a device to convert ordinary income into capital gain. * * *
>
> Nor is there anything in the legislative history that would lead us to depart from the plain meaning of the statute as petitioners would have us do. There can of course be no question that the purpose of § 117(m) was, as petitioners contend, to close a loophole that Congress feared could be used to convert ordinary income into capital gain. See H.R. Rep. No. 2319, 81st Cong., 2d Sess.; S. Rep. No. 2375, 81st Cong., 2d Sess. But the crucial point for present purposes is that the *method* chosen to close this loophole was to establish a carefully and elaborately defined category of transactions in which what might otherwise be a capital gain would have to be treated as ordinary income. * * * It is our understanding, in other words, that Congress intended to define what it believed to be a tax avoidance device rather than to leave the presence or absence of tax avoidance elements for decision on a case-to-case basis.
>
> *       *       *       *       *       *       *
>
> the judgment is essentially a legislative one and in the 1958 amendments Congress enacted a specific provision, designed to deal with this matter, that is far too complex to be summarized here.[7]
>
> [7] I.R.C. 1954, sec. 341(e)(1)(C).

We think that similar reasoning is applicable here. Whatever the purpose of section 337(c)(1)(A), there is nothing in the language of the statute to justify the construction proposed by petitioner. Nor have we found anything in the 1954 legislative history to call for petitioner's reading of the statute. Congress chose to achieve its purpose or purposes by denying the benefits of section 337 to all corporations defined as collapsible under section 341(b); given that choice by Congress, it is not our task to determine in each case whether its alleged purpose or purposes are being served. Finally, we note that in 1958, Congress enacted legislation permitting collapsible corporations to qualify under section 337 if certain requirements were satis-

fied. See sec. 341(e)(2) and 341(e)(4), I.R.C. 1954.[7] Petitioner has conceded that none of the exceptions set forth in section 341(e) are applicable here. We draw no inference from petitioner's failure to meet the requirements of section 341(e). See S. Rept. No. 1983, 85th Cong., 2d Sess., p. 34 (1958). However, we do think that the 1958 amendment suggests the relatively limited room for statutory interpretation with respect to legislation of such specificity, complexity, and articulation, cf. *Braunstein* v. *Commissioner*, 374 U.S. 65, 72 at fn. 7; *Commissioner* v. *Brown*, 380 U.S. 563, 579—at least where the statute has already been strictly interpreted by administrative regulations.

---

[7] SEC. 341. COLLAPSIBLE CORPORATIONS.

(e) EXCEPTIONS TO APPLICATION OF SECTION.—

* * * * * * *

(2) DISTRIBUTIONS IN LIQUIDATION.—For purposes of subsection (a)(2), a corporation shall not be considered to be a collapsible corporation with respect to any distribution to a shareholder pursuant to a plan of complete liquidation if, by reason of the application of paragraph (4) of this subsection, section 337(a) applies to sales or exchanges of property by the corporation within the 12-month period beginning on the date of the adoption of such plan, and if, at all times after the adoption of the plan of liquidation, the sum of—

(A) the net unrealized appreciation in subsection (e) assets of the corporation (as defined in paragraph (5)(A)), plus

(B) if the shareholder owns more than 5 percent in value of the outstanding stock of the corporation, the net unrealized appreciation in assets of the corporation described in paragraph (1)(B) (other than assets described in subparagraph (A) of this paragraph), plus

(C) if the shareholder owns more than 20 percent in value of the outstanding stock of the corporation and owns, or at any time during the preceding 3-year period owned, more than 20 percent in value of the outstanding stock of any other corporation more than 70 percent in value of the assets of which are, or were at any time during which such shareholder owned during such 3-year period more than 20 percent in value of the outstanding stock, assets similar or related in service or use to assets comprising more than 70 percent in value of the assets of the corporation, the net unrealized appreciation in assets of the corporation described in paragraph (1)(C) (other than assets described in subparagraph (A) of this paragraph),

does not exceed an amount equal to 15 percent of the net worth of the corporation.

* * * * * * *

(4) GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.—For purposes of section 337, a corporation shall not be considered to be a collapsible corporation with respect to any sale or exchange by it of property within the 12-month period beginning on date of the adoption of a plan of complete liquidation, if—

(A) at all times after the adoption of such plan, the net unrealized appreciation in subsection (e) assets of the corporation (as defined in paragraph (5)(A)) does not exceed an amount equal to 15 percent of the net worth of the corporation.

(B) within the 12-month period beginning on the date of the adoption of such plan, the corporation sells substantially all of the properties held by it on such date, and

(C) following the adoption of such plan, no distribution is made of any property which in the hands of the corporation or in the hands of the distributee is property in respect of which a deduction for exhaustion, wear and tear, obsolescence, amortization, or depletion is allowable.

This paragraph shall not apply with respect to any sale or exchange of property by the corporation to any shareholder who owns more than 20 percent in value of the outstanding stock of the corporation or to any person related to such shareholder (within the meaning of paragraph (8)), if such property in the hands of the corporation or in the hands of such shareholder or related person is property in respect of which a deduction for exhaustion, wear and tear, obsolescence, amortization, or depletion is allowable.

Petitioner also points out that in 1968 a bill was passed by the House of Representatives which was designed to make section 337 available to a taxpayer in petitioner's position. See H.R. 18101, 90th Cong., 2d Sess. (1968):

That (a) subparagraph (A) of section 337(c)(1) of the Internal Revenue Code of 1954 (relating to gain or loss on sales or exchanges in connection with certain liquidations) is amended to read as follows:

"(A) made by a collapsible corporation (as defined in section 341(b)) other than a corporation to the sale or exchange of stock of which section 341(a) would not apply by reason of section 341(d)(3), or".

(b) The amendment made by subsection (a) shall apply with respect to sales or exchanges of property made after the date of the enactment of this Act.

The report of the House Ways and Means Committee explained the reason for the bill (H. Rept. No. 1926, 90th Cong., 2d Sess., pp. 4, 6 (1968)):

A corporation which has owned "purchased assets" for more than 3 years is not, as a result of such holdings, defined as a "collapsible corporation." Therefore, such a corporation may avail itself of the benefits of nonrecognition in the case of a 12-month liquidation.

The "collapsible corporation" provision also provides relief in the case of a corporation which has "constructed or produced" its assets more than 3 years ago. In this case the statute does not exclude such a corporation from the definition of a "collapsible corporation" but, in most respects, provides what is the equivalent by providing that in such a case the sale of stock by the shareholders is not to give rise to ordinary income treatment (instead of capital gains treatment). *However, since in the case of these constructed or produced assets there is no special provision in the "collapsible corporation" definition excluding these corporations, the nonrecognition provision where liquidation occurs within 12 months is not available because the corporation even 3 years after the completion of the construction or production technically is still a "collapsible corporation."*

The fact that corporations with purchased assets and constructed and produced assets are given the same tax treatment under present law where stock is sold, but different treatment when there is a distribution in complete liquidation within a 12-month period, indicates an inequality in treatment in these two situations where there is a distribution in liquidation. The fact that the treatment is the same in these two situations where there is a sale of the stock is, in your committee's view, an indication that there is an unintended oversight in present law. For this reason your committee's bill amends present law to make available the nonrecognition of gain provision where a liquidation occurs within a 12-month period in the case of a corporation holding constructed or produced assets for a period of more than 3 years, in the same way as it is presently applicable in the case of a corporation holding purchased assets for a period of more than 3 years.

\*       \*       \*       \*       \*       \*       \*

This provision is to apply with respect to sales or exchanges of property made after the date of enactment of this bill.

[Emphasis supplied.]

The Senate accepted the House-passed bill without change but added an unrelated amendment. See S. Rept. No. 1660, 90th Cong., 2d Sess. (1968); 114 Cong. Rec. 31012 (1968). The House disagreed to the

Senate amendment, and the bill was not enacted. See 114 Cong. Rec. 31323 (1968).

While the committee reports tend to support petitioner's criticism of the present law, they clearly support the Commissioner's view of what that law is. Moreover, the proposed amendment was to apply with respect to sales or exchanges made *after* the date of enactment of the bill. Thus, even if the bill had been enacted, the legislation would not have been applicable to petitioner. In any event, the bill was not enacted; and, the product of "oversight" or not,[8] the language of section 337(c)(1)(A) remains unchanged. In our judgment the 1968 legislative history is hardly of help to petitioner.

We sustain the Commissioner's determination.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

[8] It is not altogether clear that the language of sec. 337(c)(1)(A) was simply the product of "unintended oversight." Sec. 337(c)(1)(A) must be read in the light of sec. 333(a), I.R.C. 1954, which like sec. 337, was first enacted in 1954. Sec. 333(a) provides that its benefits are unavailable to shareholders of "a collapsible corporation to which section 341(a) applies." Thus, unlike sec. 337, sec. 333 may be available to shareholders who escape sec. 341(a) by virtue of sec. 341(d). See Rev. Rul. 63-114, 1963-1 C.B. 74; Rev. Rul. 54-491, 1957-2 C.B. 232. Similar wording in sec. 337(c)(1)(A) may well have been inappropriate. Secs. 333 and 341 apply to gain realized by certain shareholders, while sec. 337 applies to the corporation itself. If sec. 337(c)(1)(A) had simply referred to sec. 341(a), difficulties might arise where sec. 341(a) applied to some shareholders but not to others. See Dohan, *Recent Developments Under Section 337,* 25 N.Y.U. Tax Instit. 297, 324 n. 71.