ELLSWORTH J. STERNER AND HELEN W. STERNER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

DAVID LEVY AND JENNIE LEVY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

BARNEY PIVNICK AND ROSE PIVNICK, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOSEPH FELDMAN AND SARAH FELDMAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 64111, 64115, 64117, 64119. Filed August 28, 1959.

*Edwin Fradkin, Esq.*, for the petitioners.
*John J. Hopkins, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* The question to be decided is whether North and Stanton and Hancock Court, or either of them, were collapsible corporations as that term is defined in section 117(m), I.R.C. 1939.

*North and Stanton.*—It is stipulated that petitioners agreed to sell their stock in North and Stanton prior to completion of construction. Thus, no question arises as to whether or not the sale was prompted by a "post-construction motive." Cf. *Max Mintz,* 32 T.C. 723. Petitioners' only argument is that the decision to sell their North and Stanton stock was attributable to the disharmony between Pivnick and Feldman rather than to a desire to convert ordinary income into capital gain.

We think petitioners have not proved the facts necessary to sustain their argument. Construction of North and Stanton was commenced more than a year after the Pivnick-Feldman dispute first arose and in spite of it, demonstrating that petitioners did not regard the dispute as serious enough to require disassociation at that time. No convincing evidence has been presented which would indicate that the dispute grew more severe during the construction of North and Stanton.

Moreover, section 117(m) is applicable even if it be assumed that petitioners sold their North and Stanton stock because of shareholder disharmony. In terms, section 117(m) requires only that the corporation *be availed of* for construction with a view to the sale of its stock prior to the realization by the corporation of a substantial part of the net income to be derived from the property. These conditions apply precisely to the instant case. Petitioners not only sold their stock prior to the realization of *any* income from the property, but they concede that the decision to sell was reached prior to completion of construction. In light of these circumstances, the fact that shareholder dissension prompted the sale is immaterial. Regulations 111, section 29.117–11(e), example (3), relied upon by petitioners, does not support their argument. In that example, "the sale of the stock by B was caused by his retiring from all business activity as a result of illness arising *after* the second building was constructed." (Emphasis supplied.) Thus, the occasion for the sale of B's shares did not arise until after completion of construction. In the case at bar, however, both of Feldman's illnesses occurred before the construction of North and Stanton was even commenced, and the Pivnick-Feldman dispute was well advanced by that time.

*Hancock Court.*—Section 117(m)(2)(B) provides that a corporation shall be deemed to have constructed property if it engaged in the

construction of such property "to any extent." Petitioners take the position that the purchase of land by Hancock Court, the hiring of a mortgage broker and an architect, the application to FHA for mortgage insurance accompanied by the architect's preliminary sketches and plans, and the negotiation of a contract to sell their stock in Hancock Court contingent on the issuance of an FHA commitment, did not constitute "construction" within the intendment of the statute. We disagree.

The record is clear that the steps undertaken by Hancock Court with regard to securing an FHA commitment were preliminary to the building of a housing project. Furthermore, what evidence there is on the point indicates that the increased value of petitioners' stock was entirely attributable to these preliminary steps and to issuance of the FHA commitment upon which consummation of the sale depended. Had petitioners pursued the construction of Hancock Court to its completion with a view to sale of their stock at that time, any gains realized by petitioners upon sale would clearly have been subject to section 117(m) treatment. But such gains would have included the very same increment in the value of petitioners' stock which they now argue should not be subject to section 117(m). *Max Mintz*, *supra;* see *Glickman* v. *Commissioner*, 256 F. 2d 108, 111 (C.A. 2), affirming a Memorandum Opinion of this Court; *Elizabeth M. August*, 30 T.C. 969, 987; *Leland D. Payne*, 30 T.C. 1044, 1058, affirmed 268 F. 2d 617 (C.A. 5). As stated in *J. D. Abbott*, 28 T.C. 795, 805, affirmed 258 F. 2d 537 (C.A. 3), "the term 'construction' was intended to have its broadest scope."

In accordance with these views, we hold that both North and Stanton and Hancock Court were "collapsible" corporations and that the gains realized by petitioners on sale of their stock were gains attributable to property which was not a capital asset.

*Decisions will be entered for the respondent.*