ESTATE OF CLINT M. SMITH, DECEASED, DONNA J. SMITH, INDEPENDENT EXECUTRIX and DONNA J. SMITH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Smith v. Commissioner
Docket No. 8456-75
United States Tax Court
T.C. Memo 1977-433; 1977 Tax Ct. Memo LEXIS 7; 36 T.C.M. (CCH) 1770; T.C.M. (RIA) 770433; December 27, 1977, Filed *7 Decedent purchased 140 acres of land, transferred it to his solely owned corporation in exchange for an installment note, and immediately discounted it to a third party who financed the purchase. The sole purpose of this format was to avoid Texas usury law. Held, the transaction should be viewed as a purchase by the solely owned corporation. Decedent subsequently transferred his stock in the corporation to a trust. Held, the transfer of stock to the trust did not result in a constructive liquidation. Held further, this transfer did not result in ordinary gain to petitioner through application of sec. 341. Decedent purchased an additional 1257 acres of land which was also transferred to a trust. The trust assumed the outstanding liability secured by the acreage. Held, because the liability assumed was equivalent to decedent's basis no gain resulted from the assumption. Held further, the payment of the accrued interest thereon did result in income to petitioner, Old Colony Trust Co. v. Commissioner,279 U.S. 716 (1929), with an equivalent deduction for interest paid. Crane v. Commissioner,331 U.S. 1 (1947). Brigham Young University was the remainderman of the trust and also *8 received a partial income interest therein. Held, the value of the gift must be adjusted to reflect the retention of the partial life interests for decedent's family and the assumption of the debt by the trust. Petitioner omitted gross income in excess of 25 percent of the amount stated in her 1968 tax return.Held, the statute of limitation was, therefore, 6 years and the statutory notice of deficiency was timely filed. Petitioner filed her return late for the taxable year 1968. However, she omitted equivalent amounts of gross income and deductions. Held, no deficiency exists and no tax is due on which a sec. 6651(a) penalty may be calculated. Hugh O. Mussina, for the petitioners. Charles R. Billings, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent issued a statutory notice of deficiency on June 17, 1975 in which he determined deficiencies in, and additions to, petitioners' Federal income tax for the calendar years 1968 and 1970 as follows: Addition to Year
Deficiency
under Sec. 6651(a)
1968
$1,210,297.43
$ 60,514.87
1970
799,127.67
119,869.15
The issues before us are as follows: (1) whether petitioners realized gain from the sale of *9 an installment obligation; (2) whether petitioners realized gain upon the liquidation of the Eight Twenty Land Company; (3) whether petitioners realized income due to the assumption of liability by the Tract #140 Trust; (4) whether petitioners realized income due to the assumption of liability by the Tract #1257 Trust; (5) whether the assumption of the debts and retention of the life estates resulted in a part-sale part-gift transaction; (6) whether the applicable statute of limitation for the years in question is 3 or 6 years; and (7) whether a penalty can be assessed for late filing for petitioners' taxable years 1968 and 1970. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Clint M. Smith (hereinafter decedent) and Donna J. Smith (hereinafter petitioner) were husband and wife at the time of filing the returns in issue herein. Clint M. Smith died on February 20, 1975 and Donna J. Smith has been appointed Independent Executrix of his estate. Petitioner resided in Fort Worth, Texas at the time the petition herein was filed.Petitioner used the cash basis method *10 of accounting. Petitioner's return for her taxable year 1968 was mailed on June 18, 1969. Petitioner had been granted a valid extension until June 15, 1969 which fell on a Saturday. Petitioner's return for her taxable year 1970 was mailed on July 15, 1971. Petitioner had been granted a valid extension until July 15, 1971 which fell on a Thursday. Respondent received the return on Monday, July 19, 1971. On their respective briefs petitioner concedes that the return for the taxable year 1968 was filed two days late while respondent concedes that petitioner's return for the taxable year 1970 was timely filed. Eight Twenty Land Company (hereinafter Land) was a corporation formed under the laws of Texas on May 13, 1968. Two days later a resolution of the board of directors of Land authorized the purchase of 140 acres from decedent for $1,100,000 payable as an installment loan. On May 15, 1968 decedent purchased 140 acres from George and Corinne Jackson. The purchase price of $580,000 was paid by Southwest Land Title Company (hereinafter Title). Decedent then signed a deed transferring the 140 acres to Land in exchange for an installment note with a face amount of $1,100,000. *11 At the same time he endorsed this note (remaining personally liable thereon) over to Republic National Life Insurance Company (hereinafter Insurance) in return for $650,000; $600,000 of which Insurance distributed to Title. This was the fund out of which Title paid Jackson $579,450.91 and paid closing costs of $3,869.59 for the transfer to land. All the above exchanges occurred at one meeting. Insurance retained the $50,000 balance to ensure payment of taxes and other expenses relating to the property. During 1968 Insurance issued checks payable to decedent in the amount of $32,000 and $16,805.04. The latter check was issued December 31, 1968 and was received by decedent in January of 1969. In 1970 Insurance issued a check payable to decedent in the amount of $15,564.21. On September 30, 1968 the fair market value of the 140 acres, if unencumbered, was $2,100,000. Decedent transferred all of his Land stock into Tract #140 Trust on November 25, 1968 pursuant to a trust agreement executed on the same day. From the time of Land's incorporation until this transfer decedent had owned 100 percent of the outstanding shares of its stock. Land's only activity during its life was the *12 purchase and retention of the 140 acres and the application for rezoning this property. [1] Land was officially liquidated March 31, 1971 though the articles of dissolution were adopted June 27, 1969 and executed November 25, 1970. On May 5, 1970 Land executed a warranty deed transferring its sole asset, the 140 acres, to the Tract #140 TRUST PURSUANT TO ITS PLAN OF LIQUIDATION. A separate tract of land consisting of 1257 acres was also purchased from the Jacksons. Decedent purchased 514 acres on April 22, 1966 for $350,000. He purchased an adjoining 743 acres on April 27, 1967 for $525,000. Both purchases were financed by loans from Insurance to decedent. Two supplemental notes executed by decedent on April 24, 1967 totaling $345,899.95 were secured by the 1257/acres. These notes represented an "interest element." This tract was transferred on November 25, 1968 to a second trust, referred to as the Tract #1257 Trust, created by the same instrument as the Tract #140 Trust. *13 The tract had a fair market value, unencumbered, of $2,500,000 as of September 30, 1968. Under both trusts decedent retained a 2/3 income interest for his life which was reduced at his death to a 1/2 income interest for petitioner's life, further reduced at her death to a 1/8 income interest for the life of each of their two daughters. The remainder interest and the income interest not retained above vested in Brigham Young University. The trusts assumed the outstanding liabilities to which the 140 acre tract and the 1257 acre tract were subject. In addition, the trusts paid the accrued interest on these debts. The trustees of these trusts were decedent and David B. Haight who was Assistant to the President of Brigham Young University. To date no income has been paid to decedent or petitioner out of either trust.
Brigham Young University subsequently employed decedent at a salary of $25,500 per year for which he showed the trust property to prospective buyers and did consultant work. OPINION Issue 1. The Installment Loan
Respondent contends that the transfer of property from decedent to Land in exchange for an installment loan constituted a sale of property. Petitioner claims *14 that the totality of the transaction should be examined. She asserts that the capacity in which decedent acted is not relevant because the end result of the transaction was a loan by Insurance on Land's note secured by Land's mortgage. The loan proceeds financed the purchase of the property subject to the mortgage. Petitioner bases her argument on Gatlin v. Commissioner,34 B.T.A. 50 (1936) and Arthur R. Jones Syndicate v. Commissioner,23 F. 2d 833 (7th Cir. 1927), wherein the intent of the parties prevailed over the form of the transaction in determining whether the transaction should be characterized as a loan or a sale. Both cases dealt with transactions whose forms were necessitated by the local usury laws. Respondent counters by asserting that the trend is to recognize the corporate entity where it is created for a business purpose, e.g. the avoidance of local usury laws, citing Collins v. United States,514 F. 2d 1282 (5th Cir. 1975); Strong v. Commissioner,66 T.C. 12 (1976) affd. 553 F. 2d 94 (2nd Cir. 1977); and Moline Properties v. Commissioner,319 U.S. 436 (1943). These cases held that a taxpayer could not pick and choose among the positive and negative results of *15 using the corporate form. Respondent's argument obfuscates the issue. Petitioner is not asking us to ignore the reality of the corporate existence, but to recognize the true capacity in which decedent acted in transacting business between Insurance and Land. At trial respondent outlined the dealings between Insurance and decedent involving the 1257 and 140 acres. He agreed that the form of these transactions was dictated by the necessity of avoiding the Texas usury laws. The legal limit on interest rates in Texas is 10 percent. [2] *16 By arranging the transaction as a sale between decedent and Land in which decedent exchanged the property for a $1,100,000 installment loan which he then "sold" to Insurance for $650,000, Land received the funding necessary for the purpose of the 140 acres in a mode which assured Insurance of a 69 percent return [3] on its extension of credit. As respondent noted in his opening statement the entire transaction occurred on May 15, 1968 with the exception of the three checks issued in 1968 and 1970 for the monies that had been retained by Insurance to ensure payment of taxes on the property Land had mortgaged to secure the loan. Respondent argues that the issuance of these checks in decedent's name supports his sale treatment. Actually, this fact supports neither party's argument because both sides agree that in form the transaction consisted of a note written by Land payable to decedent then discounted by him to Insurance. To maintain the charade necessitated that Insurance release all funds either to decedent or in his name. We find for petitioner on this issue. Decedent conducted business in his individual capacity only because he could not obtain equivalent results for Land when acting as its agent. The use of decedent as a middleman makes no sense unless the substance of the transaction is considered. Respondent agrees that in substance the transaction was a loan from insurance to Land secured by the property purchased with the proceeds thereof. We see no reason to treat it otherwise. Issue 2. Gain Upon Liquidation of Eight Twenty Land Co.
Respondent contends that the corpus of the Tract #140 Trust was, from its inception, the 140 acres of Land. Petitioner argues that the corpus of that trust consisted of 100 shares of *17 Land stock. We agree with petitioner. The instrument creating the trust also created the Tract #1257 Trust. The trust agreement incorporated attached exhibits describing the corpus of the two trusts. The exhibits presented in evidence have descriptions varying from acreage to stock and even conflict as to which land is connected with which trust. On the other hand, the witnesses presented by both parties invariably testified that the 140 acres were owned by Land. Except for David B. Haight, who stated that he was uncertain of the technicalities involved in the transaction, these witnesses testified that the corpus of the Tract #140 trust consisted of 100 shares of Land stock. We found this testimony to be credible. While the majority of the other documents written prior to the execution of the trust agreement refer to the 140 acres as the anticipated corpus of the trust, the document, requesting the drafting of the trust agreement, and the one written after its execution, discussing the cancellation and return of the 100 shares of stock issued in decedent's name, refer to a corpus consisting of 100 shares of Land stock. We find the latter documents to carry more weight as the *18 former merely refer to anticipated facts in generalized terms. Respondent asserts that petitioner realized gain upon the liquidation of Land. To back up his assertion he contends that the transfer of Land's sole asset into the Tract #140 Trust resulted in a constructive liquidation and that because Land was a collapsible corporation the gain realized on liquidation must be treated as ordinary income to petitioner. We have found, supra, that the property transferred into the Tract #140 Trust consisted of 100 shares of Land stock. Obviously, the transfer of stock ownership from an individual to a trust cannot, alone, result in a constructive liquidation. There was no distribution of Land's sole asset in conjunction with the stock transfer. Decedent transferred the stock to the trust on November 25, 1968. Land distributed the 140 acres to the trust by warranty deed executed May 5, 1970 pursuant to the plan of liquidation formally adopted by its shareholders on June 27, 1969. At neither time was decedent a shareholder of Land. One case cited by respondent in support of his argument dealt with a manufacturing corporation which had ceased doing business and had retained only intangible *19 assets in the form of credit entries on its parent's books. Winter & Co. v. Commissioner,13 T.C. 108 (1949). The second case dealt with a corporation which was in the process of liquidation during 1943 and had no valid reason to delay completion of its liquidation during that year. It was, therefore, held defacto dissolved in 1943. Wier Long Leaf Lumber Co. v. Commissioner,173 F. 2d 549 (5th Cir. 1949). Even assuming we found that the decedent retained ownership of the Land stock we still would not find a constructive liquidation of Land at the time the Tract #140 Trust was created. Land was not in the process of liquidation. Nor had it taken any steps in that direction. Its "regular business activities" were not terminated because its only "activity" was holding the 140 acres. This it continued to do. Based on this argument of constructive liquidation respondent found gain to petitioner, relying on section 331, I.R.C. 1954. Under section 331 liquidation of a corporation results in gain to the shareholders as if the stock had been sold; the sales price being the amount distributed in liquidation. Respondent then contends that because Land was a collapsible corporation the *20 gain so realized should be characterized as ordinary income. [4] As noted we have disagreed with respondent's basic premise. We have found that the corpus of the Trust was 100 shares of Land stock. We found further that Land was not constructively liquidated in 1968. Without liquidation petitioner realized no gain to be characterized *21 by section 341(a) as ordinary income. For the sake of completeness, we respond to respondent's strongly argued contention that Land was a collapsible corporation by determining that even if we had found that the decedent had retained ownership of the Land stock and if we had further found that Land was constructively liquidated in 1968, we still would not find that Land was a section 341(b) corporation. Section 341(b)(1) defines a collapsible corporation as: (b) Definitions.-- (1) Collapsible corporation.--For purposes of this section, the term "collapsible corporation" means a corporation formed or availed of principally for the manufacture, construction, or production of property, for the purchase of property which (in the hands of the corporation) is property described in paragraph (3), or for the holding of stock in a corporation so formed or availed of, with a view to-- (A) the sale or exchange of stock by its shareholders (whether in liquidation or otherwise), or a distribution to its shareholders, before the realization by the corporation manufacturing, constructing, producing, or purchasing the property of a substantial part of the taxable income to be derived from such property, *22 and (B) the realization by such shareholders of gain attributable to such property. Thus, to find that Land was a collapsible corporation we must find that it was principally formed or availed of for the prohibited purposes with a prohibited view. See Sproul Realty Co. v. Commissioner,38 T.C. 844 (1962). Both criteria of the prohibited view would be met if we found that decedent had transferred the sole asset of Land into the Trust giving rise to a constructive liquidation. Such a liquidation would result in a distribution prior to the time that Land realized a substantial part of the taxable income to be derived from the property and a subsequent realization of gain attributable to such property through application of section 331. However, a fallacy in respondent's assertion that Land was a collapsible corporation arises because Land was not principally "formed or availed of" for a prohibited purpose. Respondent urges that Land was either "formed or availed of" for the "construction" of property or for the purchase of section 341 assets.
"Construction" has been foun with a minimum of activity. Preliminary activity consisting of purchasing land, hiring an architect, applying *23 for permanent financing, negotiating for building permits and bonds, and obtaining tenants has been found to constitute construction. Sproul Realty Co. v. Commissioner,supra.Herein Land merely purchased undeveloped property and applied for rezoning. It engaged in no other activities. The potential increase in value due to the zoning change would not only accrue to property held for construction purposes, but also to land held for investment purposes. Nor can the purchase of land invariably be classified as an activity that is preliminary to construction. Preliminary connotes an initial activity that is an essential part of the construction. However, the purchase of property is preliminary not only to construction but to retention of property for investment purposes. The purchase of land and modification of zoning, alone, will not cause a characterization of the activity as "construction". Neither are the 140 acres section 341 assets. Section 341(b)(3)(A) defines as the first category of section 341 assets as stock in trade or inventory. Not all assets owned by a corporation fall within these categories. Land engaged in no activities other than the purchase and retention *24 of the 140 acres and the application for the zoning change. The purchase of an asset by an otherwise inactive corporation does not cause that property to become stock in trade or inventory.
Section 341(b)(3)(B) defines a second category of section 341 assets as those held "primarily" for sale to customers in the ordinary course of business. "Primarily" has been defined for purposes of section 1221(1) as "'of first importance' or 'principally'". Malat v. Riddell,383 U.S. 569 (1966). Because the language in section 341(b) parallels that of section 1221(1) we find "primarily" to mean "of first importance" or "principally." We do not find that Land held the 140 acres "primarily for sale to customers in the ordinary course of business." It was an inactive corporation that had no customers. Issues 3 and 4. Gain on Assumption of Petitioner's Debt
Respondent claims that a gain resulted to petitioner from the assumption of debts by the two trusts. He cites Johnson v. Commissioner,495 F. 2d 1079 (6th Cir. 1974), cert. den. 419 U.S. 1040 (1974). In arguing that no income resulted from these transactions petitioner distinguishes Johnson from the situation herein by comparing the use *25 of the loan proceeds. In Johnson the taxpayer did not invest the loan proceeds in the asset that was used to secure the loan and that was subsequently transferred to a charity which assumed the debt thereon. We do not find the use of the loan proceeds to be a material consideration. The fact remains that decedent was liable for a debt discharged by a third party. Third party payment of a debt results in income. Old Colony Trust Co. v. Commissioner,279 U.S. 716 (1929). Petitioner further bases her argument on Polkinhorn v. United States,432 F. 2d 684 (D.C. Cir. 1970). Therein the taxpayer owned a life estate in real property. In addition, she had power to encumber such property to make improvements thereon. After so encumbering the property she rented it under an agreement whereby the tenant would repay the loan in addition to a monthly rental payment. The court held that because the taxpayer could pay these notes from amounts realized on the assets the discharge of the debt benefited the remaindermen rather than the life estate. Polkinhorn is materially different from the fact situation before us. Though the proceeds were invested in the property subject to the mortgage *26 that secured the loan decedent, in his individual capacity, had no power to discharge the debt with trust principal. Polkinhorn represents a unique set of circumstances arising out of the dictates of a will. The debt assumed by the Tract #140 Trust was a liability of Land, secured by a mortgage on the 140 acres, with secondary liability on the part of decedent resulting from his endorsement of the Land note with recourse. To ignore the corporate entity and find decedent primarily liable based on his endorsement might well endanger the negotiability of notes endorsed with recourse. The loan was procured for the purchase of the property which cost $583,320.50 (sales price of $579,450.91 plus closing costs of $3,869.59). The excess of the face value of the loan over this amount represented interest.When the corporation's basis is subtracted from the amount of the loan the result is no gain or loss. See Crane v. Commissioner,331 U.S. 1 (1947). Gain to the corporation did result when the trust paid the outstanding interest. Old Colony Trust Co. v. Commissioner,supra.
The debt outstanding on the 1257 acres was of a different nature, being a liability of the decedent secured by the *27 land. However, as with the debt discussed above, the total face amount of the notes did not reflect the actual debt, but was adjusted to include the major portion of the interest to be paid on the debt. Two of the "notes" reflected interest. The actual amount of the debt assumed was $875,000. Decedent's cost basis in the property was the sales price of $875,000. Thus, the amount assumed by the trust was equivalent to decedent's cost basis and no gain to decedent resulted from the assumption. Crane v. Commissioner,supra.
Payment of the accrued interest on decedent's debt did result in income to him, with an equivalent deduction for interest paid. Old Colony Trust Co. v. Commissioner,supra.
Respondent does not question that these transactions were arranged in this format to avoid the Texas usury law. At trial he stated that in his opinion the notes for $204,000 and $141,000 secured by the 1257 acres represented "just an additional recovery of money to [Insurance]." He stated further "[that] kind of follows suit when you go over to the 140 acre transaction, you see how this transaction was set over there, in order to form the corporation and avoid the usury law." Because both *28 parties maintain that the excess of the amounts depicted as loans over the cost represented interest we see no reason to penalize petitioner by characterizing their face amounts as loans due to the form of the transaction. Issue 5. Part-Sale Part-Gift
During his opening statement respondent first introduced the argument that the transfers of property to the trusts should be characterized as part-sale part-gift. He argued the part-sale part-gift theory on brief. Petitioner contends that she was not fairly notified of this argument.
We have consistently held that issues argued first on brief will not be considered. Rule 31, Tax Court Rules of Practice and Procedure.Kaplan v. Commissioner,21 T.C. 134 (1953), appeal dismissed (2nd Cir. 1954). In Kaplan respondent had not properly placed an alternative issue before the court by reference to a Code section in his deficiency notice and at the hearing. For the court to consider the specific principle raised in the alternative on brief required consideration of concepts not previously in issue. In one instance the Fifth Circuit held that an issue was properly before the court when raised in an opening statement. Cutcliffe v. Commissioner,163 F. 2d 891 (5th Cir. 1947). *29 The holding was based on Oscanyan v. Arms Co.,103 U.S. 261 (1880). In the latter case counsel for the defendant admitted certain facts during his opening statement. In the former case the party raising the issue in the opening statement was the party held to be bound thereby.
Herein the party questioning our consideration of the issue raised first during the opening statement was not the party making reference thereto. However, where an issue is before the Court: It is immaterial whether the Commissioner proceeded upon a wrong theory in determining the deficiency, and the taxpayer has the burden of showing that the assessment is wrong on any proper theory. [Bernstein v. Commissioner,267 F. 2d 879, 881 (5th Cir. 1959). Cf. Helvering v. Rankin,295 U.S. 123, 132-133 (1935).] Herein respondent's alternative classification of the transactions as part-sale part-gift is essentially a repetition of his statement in the notice of deficiency that petitioner's gift must be adjusted to reflect the debt assumed and the retained life estate though couched in different terms and amounts. In Johnson v. Commissioner,supra at 1083, the Sixth Circuit stated that "[whether] we describe this [in] *30 substance as a 'part sale and part gift' or a 'net gift' has no importance." There, as here, the property given was pledged as collateral for a liability of the donor which was assumed by the donee. [5]
Petitioner did not object to the adjustment of the fair market value of the property subject to the charitable contribution to reflect the outstanding debt thereon and the retention of the life estates. At trial the parties stipulated the proper actuarial values to be used in these calculations. Therefore, we find that the fair market value of the gift of the 1257 acres should be adjusted to reflect the retention of life estates and the assumption of debt. [6] *31 Issue 6. Statute of Limitations
The parties have agreed that the determination regarding the timeliness of respondent's statutory notice of deficiency is dependent upon the above findings of fact. If petitioner omitted gross income in excess of 25 percent of the amount stated in the return the statute of limitations is 6 years. [7]
We have found that petitioner omitted from her 1968 gross income the amount of interest paid in that year on decedent's behalf by the Tract #1257 Trust. For the taxable year 1968 petitioner's return showed that she had no gross income. No reference to such interest was made in connection with that return capable of putting the secretary on notice thereof. Therefore, the amount omitted is in excess of 25 percent of the amount stated. Since petitioner concedes that, if we find a 25 percent omission of gross income, the applicable statute of limitation is 6 years the statutory notice of deficiency was timely issued. Issue 7. Late Filing
On brief petitioner concedes that her Federal income tax return for the taxable year 1968 was filed 2 days late. Respondent concedes that petitioner's return for the taxable *32 year 1970 was timely filed. We so find. Petitioner showed no tax due for the taxable year 1968 on her original return. We have found that she omitted from income the amount of interest paid in that year on decedent's behalf by the Tract #1257 Trust. However, once the interest payment is imputed as income to petitioner an equivalent interest deduction is available and no deficiency results. Old Colony Trust Co. v. Commissioner,supra; section 6211(a). Due to the equivalency of the amounts omitted from income and the allowable interest deduction there is still no tax due. Therefore, no section 6651(a) penalty is applicable. Decision will be entered under Rule 155. Footnotes
1. The application refers to decedent as the applicant. However, at the time of the application Land was the uncontested owner of the 140 acres. Therefore, we presume that decedent was acting on Land's behalf.↩
2. Tex. Rev. Civ. Stat. Ann. art. 5069-1.02(1967). 3. In addition to the interest rate stated on the face of the note.↩
4. SEC. 341. COLLAPSIBLE CORPORATIONS. (a) Treatment of Gain to Shareholders.--Gain from-- (1) the sale or exchange of stock of a collapsible corporation, (2) a distribution in partial or complete liquidation of a collapsible corporation, which distribution is treated under this part as in part or full payment in exchange for stock, and (3) a distribution made by a collapsible corporation which, under section 301(c)(3)(A)↩, is treated, to the extent it exceeds the basis of the stock, in the same manner as a gain from the sale or exchange of property, to the extent that it would be considered (but for the provisions of this section) as gain from the sale or exchange of a capital asset held for more than 6 months shall, except as otherwise provided in this section, be considered as gain from the sale or exchange of property which is not a capital asset.
5. Such circumstances must be distinguished from transfers conditioned on the payment of gift tax liabilities and those wherein the donor retained a right or interest in the corpus or income of a trust to which the property was transferred. Johnson v. Commissioner,59 T.C. 791 (1973), affd. 495 F. 2d 1079 (6th Cir. 1974), cert. den. 419 U.S. 1040 (1974); cf. Hirst v. Commissioner,63 T.C. 307↩ (1974).
6. Our prior holding with respect to the ownership history of the Tract 140 disposes of respondent's contention insofar as transfer of that property is concerned.
7. Sec. 6501(e)(1).↩